## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OWEN HARTY,                        :
                                   :   CIVIL ACTION
          Plaintiff               :
                                   :
     vs.                          :   NO. 18-CV-5474
                                   :
GRAND-SASSO, INC.,                 :
                                   :
          Defendant               :


### MEMORANDUM AND ORDER

JOYNER, J.                                    June  6 , 2019


     This civil action is before this Court on Motion of
Defendant to Dismiss Plaintiff's Complaint for Lack of Standing
Pursuant to Fed. R. Civ. P. 12(b)(1).  For the reasons which
follow, the Motion shall be STAYED for a period of sixty (60)
days to afford the parties the opportunity to conduct discovery
into the authenticity of the allegations set forth in
Plaintiff's complaint concerning his standing to maintain this
lawsuit.

### Factual Background

     According to the averments contained in his complaint,
Plaintiff is a resident of Broward County, Florida, is paralyzed
from the waist down and therefore uses a wheelchair to move
about or "ambulate." (Compl., ¶1).  Plaintiff further alleges
that he "travels frequently to the Philadelphia metropolitan

1

area to visit his niece, attend gun shows, and maintain his business and client contacts." (Id.)  Plaintiff ostensibly at some unspecified time visited Defendant's property, the Grand Plaza Shopping Center located at 815-827 W. Sproul Road in Springfield, Delaware County, Pennsylvania "and plans to return to the property to avail himself of the goods and services offered to the public at the property and to determine whether the property has been made ADA complaint." (Compl., ¶s 2, 5). According to Plaintiff, he "has encountered architectural barriers at the subject property which discriminate against him on the basis of his disability and have endangered his safety," and which "also prevent [him] from returning to the property to enjoy the goods and services available to the public." (Id.) Finally, "Plaintiff is also a tester for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA." (Id.)  He seeks injunctive relief, attorneys' fees, litigation expenses and costs pursuant to the Americans With Disabilities Act, 42 U.S.C. §12101, *et. seq.*

By the motion which is now before us, Defendant submits that Plaintiff Harty fails to meet the threshold jurisdictional requirement of standing because he "fails to allege that he will suffer a real and immediate threat of future injury."  Defendant further asserts that Plaintiff therefore cannot obtain

injunctive relief and his complaint should be dismissed with prejudice.  Plaintiff, of course rejoins that his pleading sufficiently avers facts entitling him to the injunctive and other relief which he seeks and therefore the motion to dismiss should be denied.

## Standards Governing Motions Under Rule 12(b)(1)

Federal Courts are courts of limited jurisdiction and a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.  Sedlak v. Sturm, Civ. No. 17-532, 2018 U.S. Dist. LEXIS 6458 at *4 (W.D. Pa. Jan. 6, 2018)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed.2d 391 (1994) and In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).  Here, Defendant is challenging this Court's subject matter jurisdiction through the mechanism of a Rule 12(b)(1) motion by claiming that Plaintiff lacks the necessary "standing" to sue.  Indeed, "[a] motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  Constitution Party v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)(quoting Ballentine v. United States, 486 F.3d 806, 810, 48 V.I. 1059 (3d Cir. 2007)).

"A district court entertaining a Rule 12(b)(1) motion to dismiss for lack of standing must first ascertain whether it

'presents a "facial attack" or a "factual attack" on the claim at issue, because that distinction determines how the pleading must be reviewed.'" Long v. SEPTA, 903 F.3d 312, 320 (3d Cir. 2018)(quoting Aichele, supra.). "A 'facial' attack … is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship between the parties or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." Aichele, 757 F.3d at 358(citing Mortensen v. First Federal Savings & Loan Ass'n., 549 F.2d 884, 889-92 (3d Cir. 1977)). "A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff." Long, supra. "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Aichele, at 358.

"A factual attack, in which the defendant contests the truth of the jurisdictional allegations, is a different matter: the court need not treat the allegations as true," and "the court must permit the plaintiff to respond with evidence

supporting jurisdiction." <u>Long</u>, <u>supra</u>.; <u>Schuchardt v. President</u>
<u>of the United States</u>, 839 F.3d 336, 343 (3d Cir. 2016)(quoting
<u>Gould Electronics, Inc. v. United States</u>, 220 F.3d 169, 176 (3d
Cir. 2000). "The court may then determine jurisdiction by
weighing the evidence presented by the parties but if there is a
dispute of a material fact, the court must conduct a plenary
trial on the contested facts prior to making a jurisdictional
determination." <u>Schuchardt</u>, <u>id</u>.

### Discussion: Standing to Sue

Article III of the Constitution limits the exercise of
judicial power to "Cases" and "Controversies." <u>Town of Chester</u>
<u>v. Laroe Estates, Inc.</u>, 137 S. Ct. 1645, 1650, 198 L. Ed.2d 64,
70 (2017). "If a dispute is not a proper case or controversy,
the courts have no business deciding it, or expounding the law
in the course of doing so." <u>Id</u>.(quoting <u>DaimlerChrysler Corp.</u>
<u>v. Cuno</u>, 547 U.S. 332, 341, 126 S. Ct. 1854, 164 L. Ed.2d 589
(2006)). Indeed, "[s]tanding to sue is a doctrine rooted in the
traditional understanding of a case or controversy." <u>Spokeo,</u>
<u>Inc. v. Robins</u>, 136 S. Ct. 1540, 1547, 194 L. Ed.2d 635, 643
(2016). "The [standing] doctrine developed in our case law to
ensure that federal courts do not exceed their authority as it
has been traditionally understood" … by limiting "the category
of litigants empowered to maintain a lawsuit in federal court to
seek redress for a legal wrong." <u>Id</u>.(citing, *inter alia*, <u>Raines</u>

v. Byrd, 521 U.S. 811, 820, 117 S. Ct. 2312, 138 L. Ed.2d 849 (1997) and Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed.2d 700 (1982)).  Thus, "[s]tanding requires more than just a 'keen interest in the issue.'"  Trump v. Hawaii, 138 S. Ct. 2392, 2416, 201 L. Ed.2d 775 (2018).

Over the years, Supreme Court precedent has

"established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized … ; and (b) actual or imminent, not 'conjectural' or 'hypothetical.'  … Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. … Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992)(citing, *inter alia*, Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S. Ct. 1717, 1723, 109 L. Ed.2d 135 (1990); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41-42, 96 S. Ct. 1917, 1926, 48 L. Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210, 45 L. Ed.2d 343 (1975) and Sierra Club v. Morton, 405 U.S. 727, 740-741, n. 16, 92 S. Ct. 1361, 1368-1369, n. 16, 31 L. Ed.2d 636 (1972)).  It should be noted that a

particularized injury is one that affects the plaintiff in a personal and individual way.  <u>Lujan</u>, 504 U.S. at 560, n. 1.

This precedent has further made clear that "it is the burden of the 'party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" <u>U.S. v. Hays</u>, 515 U.S. 737, 743, 115 S. Ct. 2431, 2435, 132 L. Ed.2d 635 (1995)(quoting <u>Warth v. Seldin</u>, 422 U.S. at 518, 95 S. Ct. at 2215 and <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936)). *In accord*, <u>Gill v. Whitford</u>, 138 S. Ct. 1916, 1923, 201 L. Ed.2d 313 (2018).  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  <u>Lujan</u>, 504 U.S. at 561, 112 S. Ct. at 2136. "And, at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial' to avoid dismissal on standing grounds."  <u>Hays</u>, <u>supra</u>; <u>Lujan</u>, 504 U.S. at 561, 112 S. Ct. at 2137.  As a result, a Plaintiff's mere possession of authority to sue under and to vindicate a statutorily-granted right is not enough, in and of itself to satisfy the standing requirement.  "Article III standing

requires a concrete injury even in the context of a statutory violation." Frank v. Gaos, 139 S. Ct. 1041, 203 L. Ed.2d 404 (2019); Spokeo, 136 S. Ct. at 1547-1548, 194 L. Ed. at 645.

In addition to the foregoing constitutional requirements, there are also a number of "prudential considerations" or judge-made limitations on the exercise of standing. Bennett v. Spear, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161, 137 L. Ed.2d 281 (1997); Warth v. Seldin, 422 U.S. at 498, 95 S. Ct. at 2205. These are: "(1) the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties, …; (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches,…; and (3) the plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Trump Hotels & Casino Resorts v. Mirage Resorts, 140 F.3d 478, 485 (3d Cir. 1998) (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474, 102 S. Ct. 752, 760, 70 L. Ed.2d 700 (1982); Miller v. Hygrade Food Products Corp., 89 F. Supp. 2d 643, 646, n. 1 (E.D. Pa. 2000).

See also, Miller v. Nissan Motor Acceptance Corp., 362 F.3d 209, 221 (3d Cir. 2004)(same).

Plaintiff here is suing for what he alleges are Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, *et. seq.* governing public accommodations.  42 U.S.C. §12182(a) provides that, as a general rule:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

Privately owned shopping centers are included in the statute's definition of "public accommodations" so long as they "affect commerce," [42 U.S.C. §12181(7)(E)], and "discrimination" is defined as:

> A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 U.S.C. §12182(b)(2)A)(ii).

"The above statutory requirements and definitions have been condensed by the case law into a three-part test: to state a claim of disability discrimination under Title III of the ADA, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods,

9

services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." Anderson v. Franklin Institute, 185 F. Supp. 3d 628, 642 (E.D. Pa. 2016)(citing Harty v. Burlington Coat Factory of Pennsylvania, LLC, No. 11-01923, 2011 U.S. Dist. LEXIS 64228, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011) and Dempsey v. Pistol Pete's Beef N beer, LLC, No. 08-5454, 2009 U.S. Dist. LEXIS 99606, 2009 WL 3584597, at *3 (D. N.J. Oct. 26, 2009)). See also, Haas v. Wyoming Valley Healthcare System, 465 F. Supp. 2d 429, 433 (M.D. Pa. 2006)("to prevail on a claim under Title III of the ADA, plaintiff must prove that: (1) he has a disability within the meaning of the ADA; (2) he was discriminated against by defendant on the basis of that disability; (3) he was thereby denied goods or services; and (4) the defendant owns, leases (or leases to), or operates a place of public accommodation.").

Furthermore, under Title III of the ADA, monetary damages are not an available remedy to private plaintiffs and therefore only prospective injunctive relief is possible. Hollinger v. Reading Health System, Civ. A. No. 15-5249, 2016 U.S. Dist. LEXIS 91393, at *30 (E.D. Pa. July 14, 2016); Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013). Accordingly, "[i]n order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat

that he would again be the victim of the allegedly unconstitutional practice." Hyman v. Capital One Auto Finance, 306 F. Supp. 3d 756, 775 (W.D. Pa. 2018)(quoting Chavis v. United States, No. 14-3461, 2014 U.S. App. LEXIS 23387, 597 Fed. Appx. 38, 42 (3d Cir. Dec. 12, 2014)). "The fact of past injury, 'while presumably affording the plaintiff standing to claim damages, does nothing to establish a real and immediate threat that he would again' suffer similar injury in the future." Adarand Constructors v. Pena, 515 U.S. 200, 210-211, 115 S. Ct. 2097, 2104, 132 L. Ed.2d 158 (1995)(quoting Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed.2d 675 (1983)); Hyman, supra. Stated otherwise, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present, adverse effects." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987); Anderson, supra; Zieper v. Reno, 111 F. Supp. 2d 484, 488 (D.N.J. 2000). And "[s]tanding will not exist for injunctive relief and declaratory relief if 'adjudication rests upon contingent future events that may not occur as anticipated or indeed may not occur at all.'" Shaika v. Gnaden Huetten Memorial Hospital, Civ. A. No. 3:15-0294, 2015 U.S. Dist. LEXIS 87478, at *20 (M.D. Pa. July 7, 2015)(quoting Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 561 (3d Cir. 2002)).

We note that in a number of Title III ADA cases commenced in this Circuit wherein disabled plaintiffs brought suit to obtain an injunction to cure discriminatory practices, the district courts have utilized a four-factor test to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and to therefore determine whether the threat of injury is "concrete and particularized." Anderson v. Macy's, 943 F. Supp. 2d at 539; Harty v. Burlington Coat Factory, 2011 U.S. Dist. LEXIS at *12 - *13(citing Disabled Patriots of America v. City of Trenton, No. 07-3165, 2008 U.S. Dist. LEXIS 73010, 2008 WL 4416459 (D.N.J. Sept. 24, 2008) and Dempsey v. Pistol Pete's Beef N Beer, LLC, No. 08-5454, 2009 U.S. Dist. LEXIS 99606, 2009 WL 3584597 (D.N.J. Oct. 26, 2009)). Under that test, the following four factors are considered: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." Anderson and Harty, both Id. "This four-factor test is one of totality, and a finding in favor of the plaintiff does not require alignment of all four factors." Id.

In this case, the Plaintiff Owen Harty, is a disabled Florida resident who is, by his own admission, "a tester for the purpose of asserting his civil rights and monitoring, ensuring,

and determining whether places of public accommodation are in compliance with the ADA." (Pl's Compl., ¶5).[1]  In his complaint, Mr. Harty avers that he "has visited the property which forms the basis of this lawsuit and plans to return to the property to avail himself of the goods and services offered to the public at the property and to determine whether the property has been made ADA compliant." (Compl., ¶5).  He further alleges that he "has encountered architectural barriers at the subject property which discriminate against him on the basis of his disability and have endangered his safety;" that "[t]hese barriers also prevent Plaintiff from returning to the property to enjoy the goods and services available to the public;" and that he "has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA." (Compl., ¶s 5 and 6). Thus, Plaintiff contends that "Defendant has discriminated, and is continuing to discriminate, against Plaintiff in violation of the ADA by failing to, *inter* alia, have accessible facilities by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000 or less)."

---

[1] Indeed, this statement appears to be something of an understatement in that a search of the dockets in this Court alone reveals that Plaintiff has commenced no fewer than 120 cases in this District since 2011.  Our review of the complaints in these other cases reflects that they were all nearly identical to the one filed here that virtually all of these other cases were closed through settlement within a few months of filing.

(Compl., ¶10).  Finally, the complaint also makes the requisite
averment that "Defendant owns, leases, leases to, or operates a
place of public accommodation as defined by the ADA and the
regulations implementing the ADA," *to wit*, the "Grand Plaza,
815-827 W Sproul Rd., Springfield, PA 19064," and that
"Defendant is responsible for complying with the obligations of
the ADA."  (Compl., ¶s 2 and 7).

Plaintiff clearly makes all the "necessary" allegations to
plead a potentially viable ADA claim on its face and were this a
purely facial challenge to the sufficiency of the pleading, we
would be constrained to deny the defendant's motion and permit
this matter to proceed onward into the discovery phase of
litigation.  This is not, however, such a challenge.  Rather, we
find that Defendant's motion to dismiss is in reality a factual
attack, insofar as the defendant here is contesting the truth of
the Plaintiff's jurisdictional allegations and whether he in
fact meets the "injury-in-fact" element of standing and passes
the four-factor intent to return test.  As such, we do not
automatically treat the allegations as true but rather we are
instructed to look further and to permit the parties time to
undertake further investigation and to allow Plaintiff the
opportunity to support the contentions contained in his pleading
with evidence supporting his claims of jurisdiction.  In so
doing, we take particular note of the lack of information

14

concerning the details and/or whereabouts of Plaintiff's niece, business and client contacts and gun shows (as Plaintiff alleges that he travels frequently to the Philadelphia metropolitan area to visit his niece, attend gun shows and maintain his business and client contacts), the dearth of particularized information concerning how frequently and/or when Plaintiff plans to return to the Philadelphia area and where in the area he plans to travel, and the manner in which the barriers and Defendant's alleged violations of the ADA affected him personally. To that end, we believe it prudent to effectively "stay" the instant motion to enable the parties to take depositions and/or other discovery into the underlying facts supporting this Court's subject matter jurisdiction.

An order follows.